# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

In Re:

**A.W. LOGGING, INC.,**

**Debtor.**

**Bankruptcy Case
No. 05-00500**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

      Randal J. French, BAUER & FRENCH, Boise, Idaho, Attorney for
Debtor.

      Kelly Beeman, BEEMAN LAW OFFICES, Boise, Idaho, Pro Se.

      Gary L. McClendon, Boise, Idaho, Office of the U.S. Trustee.

## Introduction

Attorney Kelly Beeman represented Debtor A.W. Logging, Inc. in this Chapter 11 case. After a reorganization plan was confirmed, Beeman and Debtor terminated their relationship. Beeman then applied for final approval of his compensation and expenses. Docket No. 153. His former client, Debtor, objected

MEMORANDUM OF DECISION - 1

to that application, Docket No. 160, giving rise to this unfortunate contest over Beeman's compliance with the Code and Rules, and the quality and compensability of the legal services he provided.

The Court conducted a two-day evidentiary hearing concerning the application and objection at which the parties presented evidence, testimony and argument.  Docket Nos. 162; 183.  The parties also filed post-hearing briefs. Docket Nos. 188; 190–91.  The Court has duly considered the evidence, testimony and arguments offered by the parties.  The following constitutes the Court's findings of fact, conclusions of law and disposition of the issues.  Fed. R. Bankr. P. 7052; 9014.[1]

## Facts[2]

Albert and Karen Wolske, the owners and managers of Debtor, A.W. Logging, Inc., retained Beeman in September 2004, several months prior to the bankruptcy filing, to represent Debtor in a legal dispute with Les Bois Leasing

---

[1]  Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, in effect prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

[2]  These findings include both disputed and undisputed facts.  In deciding disputed issues of fact, the Court carefully considered the testimony of the witnesses, and based upon its opportunity to observe them testify, assessed their credibility.  The Court's findings reflect its judgment on the weight to be given to that testimony.

over amounts allegedly due under certain equipment leases.  The evidence shows that Debtor made payments to Beeman for these services totaling $2,500 in September and October 2004, and February 2005.

When the issues with Les Bois Leasing could not be settled, Debtor filed for chapter 11 bankruptcy relief on February 18, 2005.  Ex. N.  On March 11, 2005, an application to approve Beeman's employment as counsel for the debtor-in-possession was filed.  Exs. A–C; Docket Nos. 9;10;15.  His employment was eventually approved by the Court, but only after Beeman resolved an objection by the U.S. Trustee.  Ex. D; Docket No. 38.[3]

During the chapter 11 case, the equipment leases were rejected, and the leased equipment was returned to Les Bois, who sold it and filed unsecured claims for lease damages.  Docket Nos. 53–55; Claim No. 11.  After considerable opposition, primarily from Les Bois Leasing, on February 27, 2006, the Court confirmed Debtor's chapter 11 plan.  Docket No. 119.[4]

---

[3]  In order to establish he was disinterested as required by § 327(a), the U.S. Trustee required Beeman to clarify that he was waiving any prepetition claim for attorney fees owed to him by Debtor.

[4]  The confirmed plan postponed the contest over the amounts owed by Debtor to Les Bois Leasing.  After extensive evidentiary hearings, the Court recently entered its order resolving Debtor's objection to Les Bois creditor's claim in this case.  Docket Nos. 119; 186–187.

MEMORANDUM OF DECISION - 3

On December 16, 2005, Beeman applied for an award of interim attorneys fees and costs.  Docket No. 100.  On the same day the plan was confirmed, pursuant to § 331, the Court approved Beeman's application and approved interim attorney fees and expenses in the amount of $24,054.52.  Docket No. 122.  Beeman gave Debtor credit for the $7,000 it had previously paid him as a prepetition retainer, leaving $17,054.52 to be paid.[5]

Debtor did not object to Beeman's interim application.  However, Ms. Wolske consulted Gale Merrick, the attorney representing the Wolskes in their individual bankruptcy case, and asked him to review Beeman's application.  Mr. Merrick advised Ms. Wolske that the amount of time spent by Beeman as reflected in the application appeared to be appropriate.

On July 10, 2006, after an apparent disagreement between Beeman and the Wolskes, substitute counsel appeared for Debtor.  Ex. N; Docket No. 152.  On the same day, Beeman filed his application for final approval of his fees and expenses.  Docket No. 153.  In that application, Beeman seeks approval of $7,805.00 in compensation and $802.68 in costs, in addition to those amounts previously approved on an interim basis.  Debtor objects, contending Beeman is

---

[5]  Debtor was to pay $500 per month to Beeman until his claim for compensation and expenses was paid in full.  *See* Third Amended Chapter 11 Plan at 4, Docket No. 86; Order Allowing Interim Fees and Costs, Docket No. 122.

MEMORANDUM OF DECISION - 4

entitled to no compensation, and that he should be ordered to disgorge all payments previously made.

## Disposition

The Court has an independent duty to carefully review all applications for awards of professional compensation and expenses to be paid in a Chapter 11 case under § 330, even in the absence of objections. *In re Dale's Crane*, 99.1 I.B.C.R. 8, 8 (Bankr. D. Idaho 1999) (citing *In re Auto Parts Club*, 211 B.R. 29, 33 (9th Cir. BAP 1997); *In re Schwandt*, 95 I.B.C.R. 268, 269 (Bankr. D. Idaho 1995)).  The professional bears the burden of proving entitlement to the requested fees, as well as the reasonableness of the amount of such fees.  *In re Dale's Crane*, 99.1 I.B.C.R. at 8. (citations omitted).  "Violation of Code, Rule or other precedent governing professional compensation in bankruptcy cases supports sanction up to and including total disallowance of compensation and disgorgement of fees previously received, even if received under prior Court order."  *Id.* at 9 (citing *Law Offices of Nicholas A. Franke v. Tiffany* (*In re Lewis*), 113 F.3d 1040, 1045 (9th Cir. 1997); *see also, Neben & Starrett, Inc. v. Chartwell Financial Corp.* (*In re Park-Helena*), 63 F.3d 877, 882 (9th Cir. 1995)).

MEMORANDUM OF DECISION - 5

The Court's award of interim fees and costs pursuant to § 331 is subject to review at a later date, and if necessary, modification. "Because interim awards are interlocutory and often require future adjustments, they are '*always* subject to the court's reexamination and adjustment during the course of the case.'" *Leichty v. Neary* (*In re Strand*), 375 F.3d 854, 858 (9th Cir. 2004) (citing *In re Evangeline Ref. Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989) (quoting 2 *Collier on Bankruptcy* ¶ 331.03 (15th ed.)) (emphasis in original). Thus, in this context, the Court will consider not only the additional professional fees and costs requested by Beeman in his final application, but also those previously awarded on an interim basis.

Beeman asserts there are procedural problems with Debtor's objection to his compensation and expenses which, he believes, require that the objection be overruled and his application approved. These procedural arguments will be considered first. The Court will then address the substance of Beeman's request for compensation and costs, and Debtor's objections thereto, and in doing so, will also conduct its own examination of Beeman's application.

## I.

Beeman first argues that Debtor's objection to his fee application was untimely, and therefore should not have been considered by the Court.

MEMORANDUM OF DECISION - 6

Beeman's application was filed on July 10, 2006. Docket No. 153. The amended notice of hearing concerning this application, Docket No. 155, was filed and served on interested parties the same day. The notice advised parties that any objections to the application must be filed and served on Beeman "no later than August 1, 2006." According to the attached certificate of service, Debtor's objection to the application, Docket No. 160, was served on Beeman by fax on August 1, but not filed with the Court until August 3, 2006.

Rule 2002(a)(6) requires that interested parties be given at least twenty days notice of any hearing on a fee application if the request exceeds $1,000. However, neither Rule 2016, the Rule governing fee applications, the other Bankruptcy Rules, nor this District's Local Bankruptcy Rules specify a deadline for objecting to a fee application. It was apparently Beeman who determined that any objections to his fee application must be filed and served by August 1. While the Court understands Beeman's interest in receiving timely notice of any objection, in the absence of a Rule establishing a time for filing objections, the Court need not enforce Beeman's deadline.

In this case, it is difficult to understand how Beeman was prejudiced by an objection filed August 3, that had been served upon him on August 1, the deadline he suggested. In addition, the objection raises serious issues about

MEMORANDUM OF DECISION - 7

Beeman's fee request which must be addressed by the Court to complete its independent review of the application.  Under these circumstances, the Court ratifies the decision it made at the hearing on Beeman's application to consider the merits of Debtor's objection.

Beeman next argues that the Court should not have entertained the Debtor's objection to his application, or allowed Debtor to present evidence at the hearings, because Debtor failed to comply with L.B.R. 9014.1.  Debtor's substituted counsel admitted he was not familiar with the Rule.

Local Bankruptcy Rule 9014.1 provides:

> If a party intends to present evidence through witnesses at a hearing on a contested matter, such party shall so indicate on the initial or responsive pleadings or, alternatively, shall so indicate in a separate notice filed with the court and served on opposing parties not later than five (5) days prior to such hearing.

The first day of hearing on Beeman's application occurred on August 8, 2006.  At that hearing, in response to his concerns, the Court made it clear to Beeman that if he felt he was prejudiced as a result of Debtor's failure to timely notify him of its intent to offer evidence and testimony concerning his application, Beeman would be granted a continuance.  Beeman declined the Court's offer, stated he was not prejudiced, and informed the Court that he was

MEMORANDUM OF DECISION - 8

ready to proceed, as he believed he would prevail on the merits.  In spite of this,

Beeman has reiterated and inflated his concerns in his closing brief, contending

that the Court permitted a "trial by ambush" when it entertained Debtor's

objection instead of strictly enforcing L.B.R. 9014.1.

Beeman's argument lacks merit.  Beeman was given the opportunity

to request a continuance, which he declined to do.  At that time, Beeman was

informed by the Court that he would thereby be waiving this objection.  Then,

after Debtor put on its evidence, the Court granted Beeman's request for a

continuance to allow him time to prepare his presentation.  The evidentiary

hearing was continued until September 6, 2006, at which time Beeman put on his

evidence.  Given this procedure, Beeman's suggestion that he was "ambushed" is,

at best, hyperbole.  Beeman had reasonable notice of Debtor's objection, and an

ample opportunity to present evidence, testimony and argument in support of his

application.

II.

Debtor has advanced several arguments in opposition to Beeman's

application.

Debtor objects to the application contending that, at the time

Beeman applied for approval of employment as Debtor's bankruptcy counsel, he

MEMORANDUM OF DECISION - 9

failed to disclose, as Debtor argues is required by § 329, that he had represented

Debtor within the one year prior to the bankruptcy filing, or to disclose that he

received two $1,000 payments from Debtor in September and October 2004, and

$500 on February 5, 2005.  Beeman argues that he need not disclose these facts

because his representation of Debtor, and the payments made to him by Debtor for

the services he provided, were not in contemplation of Debtor's bankruptcy filing.

>Section 329(a) provides:

>>Any attorney representing a debtor in a case under this
title, or in connection with such a case, whether or not
such attorney applies for compensation under this title,
shall file with the court a statement of the
compensation paid or agreed to be paid, if such
payment or agreement was made after one year before
the date of the filing of the petition, for services
rendered or to be rendered in contemplation of or in
connection with the case by such attorney, and the
source of such compensation.

Bankruptcy Rule 2014(a) requires that an application for approval of the

employment of a professional disclose all of the proposed professional's

connections with the debtor.  The application must be accompanied by a verified

statement of the person to be employed setting forth all connections with the

debtor.  Rule 2016(a) requires that, in a fee application, the debtor's attorney

disclose "what payments have theretofore been made [to the attorney] for services

MEMORANDUM OF DECISION - 10

rendered or to be rendered in any capacity whatsoever in connection with the case

. . . ."

"The disclosure requirements of Rule 2014 are applied as strictly as the requirements of Rule 2016 and section 329[.]" *Movitz v. Baker* (*In re Triple Star Welding, Inc.*), 324 B.R. 778, 789 (9th Cir. BAP 2005) (quoting *Neben & Starrett, Inc. v. Chartwell Fin. Corp.* (*In re Park-Helena Corp.*), 63 F.3d 877, 880–81 (9th Cir. 1995)). "The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions do not vitiate the failure to disclose. Similarly, a disclosure violation may result in sanctions regardless of actual harm to the estate." *Id.* (quoting *In re Park-Helena Corp.*, 63 F.3d at 880–81)).

Debtor relies points to the Supreme Court's decision in *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 478–79 (1933), to support its argument that Beeman was hired in contemplation of bankruptcy. In that case, counsel had argued that he was hired to prevent a bankruptcy filing by working with the corporate creditors, and not in contemplation of filing a bankruptcy petition for his client. The Supreme Court concluded counsel was hired in contemplation of bankruptcy stating, "[a party] is usually very much in contemplation of a result

MEMORANDUM OF DECISION - 11

which he employs counsel to avoid." *Id.* at 479 (quoting *Furth v. Stahl*, 55 A. 29, 30 (1903)).

The testimony and evidence established that Debtor engaged Beeman in August or September 2004 to represent the company in connection with a real property dispute, and also to negotiate or determine the pay-off amounts due on the equipment leases with Les Bois Leasing. There was no evidence or testimony that Beeman was retained by Debtor in contemplation of the possibility that the company may need to file for bankruptcy. On the other hand, there is evidence in the record that Beeman and Debtor's officers had discussed the possible filing of a bankruptcy case during December 2004, as demonstrated by the fact that Beeman's billing statement indicates chapter 11 information was faxed to Debtor on December 1, 2004. Ex. H. In other words, while Beeman may not have initially been retained to advise Debtor about a bankruptcy filing, at some point in time, Beeman provided such advise.

Beeman should have disclosed when the services provided to Debtor became those "in contemplation of bankruptcy" as required by § 329. Beeman should also have disclosed all payments received from Debtor, since those payments could have constituted avoidable preferences. Although Beeman's prepetition services and receipt of payments likely would not have rendered

MEMORANDUM OF DECISION - 12

Beeman an interested party under these circumstances, nor disqualified him from representing Debtor, he was required nonetheless to disclose them.

Moreover, the Court notes that Beeman's Rule 2016(b) disclosure was filed very late with the Court. Debtor's chapter 11 petition was filed on February 18, 2005; Beeman's disclosure was not filed until April 7, 2006. Docket No. 19. The Rule requires the disclosure to be filed within 15 days of the filing of the petition. This Court has repeatedly emphasized the importance of timely, as well as complete, disclosure. *See In re Combe Farms, Inc.*, 01.1 I.B.C.R. 7, 9 (Bankr. D. Idaho 2001) (citing *In re Jordan*, 00.1 I.B.C.R. 46 (Bankr. D. Idaho 2000); *In re Soderberg*, 99.4 I.B.C.R. 152 (Bankr. D. Idaho 1999); *In re Jay D. Fitch Ins. Agency, Inc.*, 91 I.B.C.R. 20 (Bankr. D. Idaho 1991)). As it has done in other cases, the Court is therefore compelled to reduce Beeman's fee request for this lack of diligence.

While it could deny Beeman all compensation as a result of his failure to fully disclose his connections and transactions with Debtor, in the exercise of its discretion, the Court will instead discount Beeman's total fee request by ten per cent (10%) as a sanction for failing to make full and complete disclosures.

MEMORANDUM OF DECISION - 13

III.

Debtor next contends Beeman failed to disclose to the Court that he became an interested party during the course of the bankruptcy proceeding by purchasing wood products from Debtor.  Beeman argues that this transaction with his client did not destroy his disinterestedness because he did not pay for the wood until it was delivered, and thus he was never a creditor.

The Court doubts the wisdom of a chapter 11 attorney engaging in business transactions with the client during the bankruptcy case, even on a cash basis.  Debtor and Beeman both assumed a risk that a problem would develop from their dealings that would render Beeman an interested party and disqualify him from representing Debtor.  However, in this instance, no problems arose to impact Beeman's disinterestedness.  The Court concludes this transaction, while perhaps imprudent under the circumstances, does not impact his request for fees.

IV.

Debtor's next objection is that it never signed the application to employ Beeman.  In fact, the only signature appearing on the application was Beeman's.  Exs. A–C, Docket Nos. 9; 15; 20.  As a result, Debtor now contends that "Debtor did not make any application to employ Mr. Beeman as its attorney." Debtor's Closing Argument at 7, Docket No. 190.  The U.S. Trustee filed

MEMORANDUM OF DECISION - 14

objections to the first application to employ Beeman which were cured, and the

Court indicated, during a status conference conducted with the Wolskes present in

court on June 7, 2005, that it would approve the application to employ Beeman if

it received an appropriate order indicating that the U.S. Trustee's objection had

been resolved.  Beeman provided such an order, which was entered on June 17,

2005.  Ex. D, Docket No. 38.

> The applicable Rule provides in part:
>
> An order approving the employment of attorneys,
> accountants, appraisers, auctioneers, agents, or other
> professionals pursuant to § 327, § 1103, or § 1114 of
> the Code *shall be made only on application of the
> trustee or committee*[.]

Fed. R. Bankr. P. 2014(a) (emphasis added).  There is apparently no case law

focusing solely on the implications of a debtor's failure to sign an application to

employ a bankruptcy professional.  However, in *Movitz v. Baker* (*In re Triple Star

Welding, Inc.*), *supra*, the debtor did not sign the application to employ, and in

addition, no Rule 2014 verified statement was filed by the attorney to be

employed.  324 B.R. at 790 n. 14.  The BAP indicated "[the debtor's attorney's]

own nondisclosure is not the only problem.  The employment application was

signed by [debtor's attorney] not by Debtor as required by Rule 2014(a).  The

practical consequence is that Debtor has not disclosed its own knowledge about

MEMORANDUM OF DECISION - 15

[debtor's attorney's] connections to Debtor, creditors, or other parties in interest,

etc." *Id.* at 792 (citing Fed. R. Bankr. P. 2014(a)).  The BAP published its

decision "to stress to the bar the importance of full and timely disclosure of

pertinent facts, and compliance with all procedural rules, as part of the

employment and compensation of professionals in bankruptcy cases." *Id.* at 782

n. 2.

       There is no doubt that one or both of the Wolskes, Debtor's

principals and officers, should have executed the application to employ Beeman

on Debtor's behalf.  However, the Wolskes appeared in court with Beeman

repeatedly for hearings and proceedings during Debtor's bankruptcy, and never

questioned Beeman's authority to act on the company's behalf.  In particular, the

Wolskes attended the status conference where Beeman's employment application

was discussed.  Presumably, if the Wolskes did not want Beeman to represent their

company, they would have so indicated to the Court.  Under these circumstances,

the Court has no doubt that the Wolskes, acting for Debtor, intended to employ

Beeman as Debtor's attorney.  Debtor and the Wolskes should not now, after

Beeman's services have been provided, be allowed to argue that they did not

authorize Beeman to represent Debtor.  The Court will not, under these facts, deny

MEMORANDUM OF DECISION - 16

Beeman compensation because he failed to require a corporate officer to sign the employment application.

## V.

Finally, Debtor contends that Mr. Beeman failed to prove he is entitled to any compensation, including the interim compensation previously awarded by the Court. Debtor, in its closing argument, sets forth numerous complaints about the quality of Beeman's services, which it maintains collectively justify denial of all fees to Beeman. The Court will consider these complaints in connection with its own, independent examination of the fee award.

## A.

"Compensation awards to professionals are made under the criteria set forth in Bankruptcy Code Section 330(a) and generally are reviewed for an abuse of discretion." *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp.* (*In re CIC Inv. Corp.*), 192 B.R. 549, 551 (9th Cir. BAP 1996) (citing *In re Dutta*, 175 B.R. 41, 43 (9th Cir. BAP 1994)). Section 330(a)(1) "authorizes 'reasonable compensation for actual, necessary services rendered' by a professional." *Ferrette & Slater v. United States Trustee* (*In re Garcia*), 335 B.R. 717, 724 (9th Cir. BAP 2005). This includes reimbursement for actual, necessary expenses as well. *Id.* at 723. When determining whether the services were actual

MEMORANDUM OF DECISION - 17

and necessary, "a professional need demonstrate only that the services were

reasonably likely to benefit the estate at the time rendered."  *Id*. at 724.

> The Code provides:

> > In determining the amount of reasonable compensation
> > to be awarded, the court shall consider the nature, the
> > extent, and the value of such services, taking into
> > account all relevant factors, including– (A) the time
> > spent on such services; (B) the rates charged for such
> > services; (C) whether the services were necessary to
> > the administration of, or beneficial at the time at which
> > the service was rendered toward the completion of, a
> > case under this title; (D) whether the services were
> > performed within a reasonable amount of time
> > commensurate with the complexity, importance, and
> > nature of the problem, issue, or task addressed; and (E)
> > whether the compensation is reasonable based on the
> > customary compensation charged by comparably
> > skilled practitioners in cases other than cases under
> > this title.

11 U.S.C. § 330(a)(3).  In addition to the above factors, "the court shall not allow

compensation for (i) unnecessary duplication of services; or (ii) services that were

not reasonably likely to benefit the debtor's estate or necessary to the

administration of the case."  11 U.S.C. § 330(a)(4).

> B.

> The Court has considered all of the relevant factors for awarding

professional compensation and expenses discussed above, including those

specifically set forth in the Code, in reviewing Beeman's application in this case.

MEMORANDUM OF DECISION - 18

In addition, the Court has also taken into account Debtor's complaints about

Beeman's work, which are summarized as follows:

> 1. Beeman's actions led to the rejection of favorable leases[;]
> 2. Beeman did not effectively protect A.W. Logging from Les Bois Leasing[;]
> 3. Beeman attempted to coerce A.W. Logging's cooperation[;]
> 4. Beeman caused to be filed documents which were materially incomplete and therefore inaccurate[;]
> 5. Beeman charged for unnecessary and harmful services[;]
> 6. Beeman does not appropriately describe the services he rendered[; and]
> 7. Beeman did not exercise billing judgment.

Debtor's Closing Argument at 10–22, Docket No. 190.

Many of Debtor's specific objections about Beeman's services are

effectively invitations to the Court to review Beeman's strategy judgments in

representing Debtor.  While some review by the Court is appropriate, generally,

when faced with several possible courses of action, the Court is necessarily

reluctant to second-guess an attorney's choices about how best to represent the

client's interests.  As other courts have stated:

> The Court is not inclined to engage in overly critical retrospection "or to second guess actions and decisions undertaken by attorneys in good faith as the situation appeared to them at the time such actions or decisions were necessary."  *In re Public Service Co. of New Hampshire*, 86 B.R. 7, 12 (Bankr. D. N.H. 1988).

MEMORANDUM OF DECISION - 19

> Rather, the Court is inclined to determine any benefit,
> or lack thereof, to the estate based upon a totality of
> circumstances.

*In re Washington Mfg. Co.*, 101 B.R. 944, 956 (Bankr. M.D. Tenn. 1989).  Thus,

other than considering the "totality of circumstances," the Court declines to

microscopically examine and weigh every strategic decision made by Beeman

throughout the chapter 11 case.

For example, Debtor contends that Beeman persuaded, or even

coerced Debtor on several occasions to agree to take certain actions and certain

positions during the chapter 11 case, by threatening the Wolskes that Beeman

would withdraw if his advice was not taken, which would then inevitably lead to

the conversion of the case to one under chapter 7.  Additionally, Debtor contends

Beeman improperly handled Debtor's various disputes with Les Bois Leasing, and

that Beeman refused to properly pursue, or at least to preserve, its claims against

Mr. VerMett, owner of Les Bois Leasing, after he allegedly interfered with

Debtor's attempts to cultivate a business relationship with the Poplar Growers

Association.

Beeman maintains that he gave appropriate advice to his client

throughout the course of the representation, explaining to the Wolskes their

options and recommending an appropriate course of action under the

MEMORANDUM OF DECISION - 20

circumstances, to which they eventually agreed.  He acknowledges telling the

Wolskes that, depending upon Debtor's course of action in the chapter 11 case in

general, and in the contests with Les Bois Leasing in particular, that there was a

risk of involuntary conversion of the case to chapter 7, and the loss of their

business to liquidation.  Beeman contends that he did not coerce the Wolskes into

taking any actions, and that he did not pursue a claim against Mr. VerMett based

upon his belief that, ethically, the necessary facts to justify taking action against

him were lacking.

On all these points, the evidence that Beeman acted inappropriately

in representing Debtor is, at best, equivocal.  Each of the parties recalls

conversations and describes their respective motivations differently.  What is clear

is that the parties did not communicate effectively with one another, and

apparently, at some time, the Wolskes lost confidence in Beeman's counsel and

advise.  Of course, the Wolskes, on Debtor's behalf, could have at any time, and

perhaps should have, terminated Beeman as the company's attorney.  But they did

not do so until all the services described in the application had been completed.

The Court also notes that the Wolskes retained Mr. Merrick to

represent them in their personal chapter 11, and that he regularly attended the

hearings in Debtor's bankruptcy case.  Clearly, Debtors were not completely at the

MEMORANDUM OF DECISION - 21

mercy of Beeman as they attempt to portray.  They had access to another attorney, albeit representing them personally, with whom Ms. Wolske frequently consulted. This is an additional reason why, if they were dissatisfied with Beeman, they should have fired him.

At no time prior to this fee dispute was the Court made aware of any problems between the Wolskes and Beeman.  Instead, the Wolskes participated in the hearings before the Court, executed critical documents on behalf of Debtor prepared by Beeman, and eventually proposed and confirmed a chapter 11 plan of reorganization.

While the Court is cognizant of the various complaints Debtor makes concerning Beeman's services and will, if relevant, consider them as it reviews the fee application, the Court will not engage in after-the-fact criticisms of the strategic decisions made by Beeman and his client during the bankruptcy case. Even if Beeman's legal advice was flawed, the appropriate response was for the Wolskes to either withhold their consent to his recommendations, or terminate his services.

V.

MEMORANDUM OF DECISION - 22

Beeman's interim application covers services provided between February 15 and December 13, 2005. He billed 146.4 hours to Debtor which, at a rate of $175 per hour, amounts to a total of $25,620.00. He seeks reimbursement of $97.02 in expenses in that application. Docket No. 100. At the hearing on the application, held on February 8, 2006, *see* Docket No. 113, Beeman agreed with the U.S. Trustee to reductions in the amount of fees to $23,957.50, which the Court then approved and incorporated in its February 27, 2006, order allowing a total interim award of $24,054.52.

Beeman's final application seeks additional fees for services provided from December 23, 2005, through May 31, 2006. He alleges he spent another 44.6 hours of time, worth $7,805.00. He claims additional costs of $802.68. Docket No. 153. Therefore, Beeman seeks final approval of a total compensation and expenses of $32,662.20.

The Court has, as discussed above, decided to impose an across-the-board reduction in fees based upon Beeman's failure to fully disclose his connections and transactions with Debtor during the employment approval process. However, there are other problems with Beeman's fee applications which warrant further reductions.

MEMORANDUM OF DECISION - 23

First, as Debtor points out, Beeman's descriptions of the services he provided in his itemizations of time in his applications are, in many cases, too cryptic to allow the Court to understand the necessity and benefit flowing from those activities. For example, the applications are replete with entries such as "telephone conversation with Karen Wolske," "meeting with [attorney]," or "email to [person]."

Debtor's argument has merit. Under Rule 2016(a), a "detailed statement" of services rendered is required. *See, In re CIC Inv. Corp.*, 192 B.R. 549 (9th Cir. BAP 1996), *citing In re Roderck Timber Co.*, 185 B.R. 601 (9th Cir. BAP 1995). And this court "should award fees only to the level proven to be actual, necessary and reasonable." *Id.*; *See also In re Voechting*, 03.4 I.B.C.R. 237, 238 (Bankr. D. Idaho 2003) (concluding the itemization of services rendered were insufficient, requiring the Court to speculate as to the services actually performed resulting in an across-the-board reduction in fees.); *In re Jordan*, 00.1 I.B.C.R. 46, 48 (Bankr. D. Idaho 2000) (disallowing fees for "unacceptably terse descriptions.").

Beeman responds to Debtor's arguments by noting that each service description is also assigned a categorical designation, such as "Asset, Analysis and Recovery," "Case Administration," or "Plan and Disclosure Statement." But this

MEMORANDUM OF DECISION - 24

argument helps him very little, since even with this additional snippet of general information about these tasks, many of the individual time entries remain deficient as to the narrative quality necessary to discern what Beeman did, and why those services should be compensable under § 330(a).

Because Beeman's itemization of services displays a general lack of adequate detail, the Court has determined that an overall reduction, as opposed to an entry-by-entry analysis, best addresses this defect. Beeman's fees will be reduced by an additional ten per cent (10%) to reflect this deficiency.

Debtor also correctly observes that Beeman has billed two hours ($350) for preparing for, and attending, a hearing on June 27, 2005, when no such hearing occurred.[6] This sort of error hardly gives the Court confidence in the accuracy of the other entries. Beeman will not be allowed any compensation for this entry.

Next, Debtor questions Beeman's efficiency and billing judgment in charging Debtor for a total of 23.5 hours in a "review" of Debtor's financial reports. Again, without more information and a more comprehensive description of the services involved, and the need for such services, the Court agrees this is an excessive charge, and a reduction of charges to ten hours is appropriate.

---

[6] Indeed, this bankruptcy judge was not in Boise on the date indicated.

MEMORANDUM OF DECISION - 25

In summary, Beeman's itemization of time and services reflects serious problems which must be addressed by an appropriate reduction in the amount of fees requested.

## VI.

Reconciling the conclusions reached above, the Court determines that while Beeman should be awarded some of the compensation he has requested, he has not proven an entitlement to the full amount claimed.  What follows reflects the Court's judgment on the amount of reasonable compensation Beeman should be awarded pursuant to § 330(a) as attorney for Debtor:

| | |
|---|---|
| Beeman's total fee request: | $31,762.50[7] |
| (Less: Amounts erroneously charged for June 27, 2006 hearing) | (    350.00) |
| (Less: Overcharges for review of Debtor's financial reports – 13.5 hours @ $175 per hour) | (  2,362.50) |
| (Less: 10% reduction for inadequate/ untimely disclosures) | (  3,176.25) |
| (Less: 15% reduction for lack of detail in itemizations of services) | (  3,176.25) |

---

[7]  This figure includes the $23,957.50 which Beeman agreed was appropriate at the hearing on his interim application, *see* Docket No. 113, and as reflected in the Court's prior order, Docket No. 122, plus the $7,805.00 requested in his final application, Docket No. 153.

MEMORANDUM OF DECISION - 26

Total approved compensation:                   $22,697.50

Plus: Reimbursable Expenses                         899.70

Total approved compensation
and expenses:                                  $23,597.20

Beeman may submit an order for entry by the Court which is
consistent with this decision.  Of course, the order should reflect that Debtor is
entitled to credit for the $7,000.00 pre-petition retainer given to Beeman, as well
as credit for payments made to him by Debtor after entry of the interim fee award.
The balance shall be payable from Debtor to Beeman according to the terms of
Debtor's confirmed chapter 11 plan.  Debtor's substitute counsel shall approve the
form of the order.

Dated:  November 29, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 27